UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ELIZABETH RELYEA and JILL MICHEL,

                          Plaintiffs,      **MEMORANDUM & ORDER**

  -against-                                03 Civ. 5580 (DRH) (MLO)

CARMAN, CALLAHAN AND INGHAM,
L.L.P.,

                          Defendant.
----------------------------------------------------------X

**Appearances:**

**ZABELL & ASSOCIATES, P.C.**
Attorney for Plaintiff
4875 Sunrise Highway, Suite 300
Bohemia, NY 11716
By: Saul D. Zabell, Esq. & R. Elizabeth Urena, Esq.


**FRANKLIN, GRINGER & COHEN, P.C.**
Attorney for Defendant
666 Old Country Road, Suite 202
Garden City, NY 11530
By: Martin Gringer, Esq., & Joshua Marcus, Esq.


**HURLEY, District Judge**

*INTRODUCTION*

       Plaintiffs Elizabeth Relyea ("Relyea") and Jill Michel ("Michel") (collectively

"Plaintiffs") filed the present suit against Defendant Carman, Callahan and Ingham, L.L.P.

("Defendant") seeking overtime pay pursuant to the Fair Labor Standards Act of 1938 ("FLSA")

and New York State Labor Law. Defendant has moved for summary judgment and Plaintiffs

have filed an opposition. For the reasons set forth herein, the Court DENIES Defendant's motion for summary judgment.

## BACKGROUND

The material facts, drawn from the parties' Local 56.1 Statements and submitted evidence, are undisputed unless otherwise noted. Plaintiffs both reside in Suffolk County, New York. Defendant is a law firm organized under the laws of New York and doing business in Nassau County. At all times relevant to the current dispute, Plaintiffs were employees of Defendant.

Relyea worked for Defendant from June 2003 to September 2003 as a real estate closer. Relyea's primary task was performing closings for Defendant's client Mortgage Concepts. Michel worked for Defendant from December 2001 to May 2003, also as a real estate closer. Michel worked exclusively out of the Mortgage Concepts's office. Plaintiffs both reported to Craig Augi, an attorney who supervised the closing department, and Greg Carman, a partner at the firm.

Plaintiffs were responsible for preparing documents prior to closings, overseeing and attending closings, distributing checks at the closing, and completing closing documents after closings. (*See* Def.'s Rule 56.1 Statement ¶ 28.) Plaintiffs attended real estate closings as the banks' representative, on behalf of Defendant. Once a real estate closing had been assigned to Plaintiffs, they would receive the file and pertinent information from the bank that Defendant was representing. Plaintiffs would then draft necessary documents, review title reports to ensure that title was clear, and would confirm that the title reports contained the requisite information. If there were any problems, Plaintiffs would notify an attorney or speak directly to the bank.

Plaintiffs' duties also included: recognizing deficiencies before closing, such as bankruptcy, and then consult an attorney; determining whether the closing documents and policy information matched; preventing a closing if all of the proper paperwork had not been completed; reviewing documentation and paperwork prior to closing; attending most closings, on their own; and exercising their discretion to disburse the checks to the parties at closing if all of the prerequisites had been met and all the paperwork had been completed. Defendant also notes that "closers were required to troubleshoot any problems that arose at the closings." (*Id.* ¶ 45.)

Plaintiffs filed the Complaint on October 17, 2003, asserting that Defendant was required by law to pay overtime at the statutory rate of time and a half. Plaintiffs asserted that they worked more than fifty hours per week during the many weeks of their employment. Defendant moved for summary judgment on November 30, 2005, asserting the affirmative defense that Plaintiffs are exempt employees under FLSA.[1] Plaintiffs opposed the motion, and Defendant submitted a memorandum of law in reply.

*DISCUSSION*

I.      *Summary Judgment Standard*

---

[1] Plaintiffs argue that Defendant waived this affirmative defense because Defendant failed to plead the defense with particularity. (*See* Pls.' Opp'n Mem. at 7-8.) Defendants raised the FLSA exemption in their Answer, but did not articulate all of the details and facts regarding the defense. Though they did not plead the defense with particularity, there is no reason to deem the defense waived. It is well-settled that "a district court may consider the merits of an affirmative defense-even one explicitly listed as such in Fed.R.Civ.P. 8(c)-raised for the first time at the summary judgment stage, so long as the plaintiff has had an opportunity to respond." *Astor Holdings, Inc. v. Roski, III*, 325 F. Supp. 2d 251, 260-61 (S.D.N.Y. 2003) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 330-31 (2d Cir. 2003)); *Schwind v. EW & Associates, Inc.*, 371 F. Supp. 2d 560, 563 (S.D.N.Y. 2005). Plaintiffs had an opportunity to respond to the defense and did not assert that they were prejudiced by Defendant's failure to fully articulate the defense in the Answer. As a result, Plaintiffs' argument that the affirmative defense exemption was waived has no merit.

Summary judgment is generally appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (quoting Fed. R. Civ. P. 56(c)). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying those materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has offered some evidence that no genuine issue of material fact remains to be tried, the burden shifts to the non-moving party to provide similar evidence indicating that a genuine, triable issue remains. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55.

In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987). Nevertheless, it is well-established that a non-movant cannot defeat summary judgment with nothing more than "unsupported assertions,"

*Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), or the allegations in its pleadings. *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); Fed. R. Civ. P. 56(e). More particularly, although "summary judgment should be used sparingly" in cases where the material fact at issue is the defendant's intent or motivation, the plaintiff must nevertheless offer some "concrete evidence" in his favor, and is "not entitled to a trial simply because the determinative issue focuses upon the defendant's state of mind." *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1998). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985).

II. FLSA

Under the FLSA, an employer is required to pay overtime wages to employees who work in excess of forty hours per week. *See* 29 U.S.C. § 207(a)(1). An employee is exempt from the Act, however, if he or she is employed in a "bona fide executive capacity." *Id.* § 213(a)(1). For an employee who earns at least $250 per week, the Secretary of Labor's regulations provide that an employee qualifies for the bona fide executive exemption if the employee satisfies a "duties" test and is paid on a "salary basis." *See Reich v. Walbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995) (citing 29 C.F.R. §§ 541.1, 541.118). Each requirement must be satisfied to achieve exempt status. *See id.* Here, as explained *infra*, Defendant has failed to show that Plaintiffs satisfy the "duties test."

Under the duties test, a salaried employee achieves exempt status if his "primary duty" is administrative. The duties test consists of two prongs. An "administrative" employee is one whose "primary duty" consists of "office or non-manual work" that: (1) is "directly related to

management policies or general business operations" of the employer; and (2) requires "the exercise of discretion and independent judgment[.]" 29 C.F.R. §§ 541.2(a)(1) & (e)(2); *Reich v. State of New York*, 3 F.3d 581, 587 (2d Cir. 1993). Determining whether an employee has management as his or her "primary duty" involves a mixed question of fact and law. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).

As to the "work directly related to management or general business operations" factor, Defendant argues that a law firm is engaged in the practice of law. As a result, Plaintiffs, as real estate closers, "served an ancillary function to the law firm by performing acts which were not the firm's main commodity." (Def.'s Mem. at 12.) While agreeing that their labor was "non-manual," Plaintiffs nevertheless contend that their positions never required them to perform tasks "directly related to the law firm's management policies or general business operations." (Pls.' Opp'n Mem. at 13.) Instead, Plaintiffs argue, closing is "the real estate department's principal production activity." (*Id.*)

"The distinction between administrative work and production work separates those employees whose primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services that the enterprise exists to produce and market." *Schwind v. EW & Assoc., Inc.*, 357 F. Supp. 2d 691, 705 (S.D.N.Y. 2005). Plaintiffs are closers, responsible for representing the lender or bank at real estate closings. At closings, Plaintiffs would advise both the banks and their supervisors regarding problems that arose. (*See* Aff. of Joshua Marcus, dated Nov. 30, 2005, Ex. A, at 117-18.) According to Defendant, "[I]t was also Plaintiffs' job duty to carry out the policies of Carman Callahan, and, more importantly, the policy of the banks in their duties prior to the

closing, at the closing and after the closing." (Def.'s Mem. at 13.) Plaintiffs also did a number of tasks that involved reviewing reports, reviewing certificates of occupancy and insurance policies, determining that all proper paperwork had been completed, and "troubleshooting any problems that arose at the closings." (*Id.*)

Defendant cites *Schwind* to support its position. In *Schwind*, the court held that a vice president who performed sales work but acted as an on-site liaison between his employer and clients was administratively exempt. Defendant hopes to draw a parallel between Plaintiffs' on-site liaison duties. The court described the plaintiff's duties in *Schwind* as follows:

> Plaintiff acted as a liaison between EWA and most of its major clients. In addition, plaintiff proposed business deals to clients and negotiated many contracts. Plaintiff also directed fellow employees in accomplishing the goals of the company.
>
> Plaintiff asserts that his primary duty was "sales," however the only evidence to support that claim is his self-serving testimony. When pressed by defendants' counsel regarding his duties, plaintiff admits to having much more responsibility than just sales. Plaintiff was very involved in business decisions of EWA and would often discuss business prospects and finances with Wirth. He interviewed potential trainers, scheduled trainers to provide consulting and training to clients and worked closely with clients in meeting their needs. In addition, plaintiff was not subject to supervision by defendants. He was not required to keep time sheets, planned his own schedule, worked mostly from home or on-site and made many decisions that were vital to the management and business of EWA, such as the hiring of trainers who would then be assigned to clients. Moreover, plaintiff admitted that he often represented himself to clients as a partner of EWA. Plaintiff maintains he did so to put the clients at ease so that they felt like they were "dealing with someone higher up" who was capable of making decisions and agreements. This further evidences that plaintiff had authority to make decisions vital to the business of EWA. Plaintiff represented the company, negotiated contracts, promoted sales and was involved in business research and control.

357 F. Supp.2d at 705.

Once these duties are considered, the relevance of *Schwind* quickly evaporates. The plaintiff in *Schwind* was involved in the heart of the business operations, determining the strategies and future of the company. He discussed business prospects and proposed business deals on the company's behalf. He performed tasks crucial to the company's constitution and identity. The present case is distinct. Plaintiffs did not create firm strategy, did not craft firm policy, and did not attempt to draw new business into the firm. Their roles were primarily functional, rather than conceptual. As a result, *Schwind*'s factual bases render its holding inapposite.

Though not mentioned by the parties, *Reich v. Chicago Title Ins. Co.*, 853 F. Supp. 1325 (D. Kan. 1994), is on point. In its well-crafted opinion, the court concluded that closers were not exempt employees, articulating the problems of equating "advise" with "inform" and "negotiate" with "request." *Id.* at 1331. The closers' duties were described as follows:

> Escrow closers have direct contact with the Company's customers and forward the requests for title insurance from the customers. The closer quotes the fee for title insurance. The escrow closer also responds to pertinent questions which may arise through the closing transaction. The closer prepares the buyer's and seller's closing statements and insures that all closing documents are properly prepared. The closer sets up a closing appointment, and follows up with the customers to insure that the transaction is progressing to completion. The closer supervises the execution of the closing documents and prepares the closing statements. The closer receives and receipts money from the buyer and examines the closing file to insure that the lending agent's requirements have been satisfied. The closer orders the loan check, updates the closing file and determines the appropriate tax payoff. The closer receives and disburses the loan funds from the lending agent. The closer's duties include maintaining the file for release of liens and, if a payoff has been ordered, reviewing the file to insure that all money has been disbursed and taxes have been paid. Upon closure of the file, the closer disburses all funds to seller, lender, realtor and other appropriate parties. Finally, the closer provides the recorded deed and title policy to the buyer and follows-up with the Company's customer. As part of the above process, the closer also conducts a closing conference in almost all instances.

> The closer sends out recording packages, returns loan packages to the lenders, orders payoffs, orders termite inspections, checks on home association dues, types contracts, returns recorded documents to lenders, to sellers and to buyers, and sends other documents, such as releases, to be recorded. Commercial escrow closers perform duties similar to residential escrow closers, but in the context of a commercial real estate transaction.

*Reich*, 853 F. Supp. at 1327-28. The court concluded that these duties demonstrate that closers "apply existing policies and procedures on a case-by-case basis." *Id.* at 1332. Relying upon the Ninth Circuit's opinion in *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990), the court distinguished the application of company policy from the crafting of company policy, reasoning that "'advising the management' as used in [§ 541.205(b)] is directed at advice on matters that involve policy determinations, *i.e.*, how a business should be run or run more effectively, not merely providing information in the course of the customer's daily business operation." *Reich*, 853 F. Supp. at 1332 (quoting *Bratt*, 912 F.2d at 1070). The court concluded that neither the fact that the closers advised the banks or their superiors regarding a given account, nor the fact that the closers were actively involved in applying company policy was adequate to make them exempt "administrative" employees pursuant to FLSA.

The duties performed by Plaintiffs in this case are the same as those duties performed by the closers in *Reich*. Like the closers in *Reich*, Plaintiffs applied existing policies and procedures on a case-by-case basis. Their duties do not involve the crafting of those policies, but rather the application of those policies. As a result, Plaintiffs are better described as "production," rather than "administrative" workers, and they are not exempt from FLSA. *See Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir. 1990) ("The distinction § 541.205(a) draws is between those employees whose primary duty is administering the business affairs of the enterprise from those

whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market."); *see also Bratt*, 912 F.2d at 1070 (articulating the test as whether workers engaged in running the business or carrying out its day-to-day affairs).

In sum, because Plaintiffs' duties are not directly related to the management or general business operations of the firm, Plaintiffs are not exempt employees as a matter of law. Accordingly, the Court Defendant's affirmative defense fails and the Court denies Defendants motion for summary judgment.

III.  *State Law Claim*

As to Plaintiff's state law claim, Defendant argues that the claim should be dismissed "since the New York State Labor Law mimics the provisions set forth in FLSA." (Def.'s Mem. at 6-7 n.3.) Because the Court has denied Defendant's motion for summary judgment as to the FLSA claim, the Court similarly denies the motion for summary judgment as to the New York State Labor Law.

*CONCLUSION*

In accordance with the foregoing, the Court DENIES Defendant's motion for summary judgment. Plaintiffs did not move for summary judgment, however, and it is not clear whether questions of material fact remain as to Plaintiffs' case. Therefore, the parties are directed to submit letter briefs to the Court by September 18, 2006, indicating what further matters need to be addressed.

**SO ORDERED.**

Dated: Central Islip, New York
September 6, 2006

/s/
Denis R. Hurley
Unites States District Judge